## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| PEARSON'S INC. d/b/a PEARSON LIVESTOCK EQUIPMENT CO. | § § § | |
| Plaintiff | § § | CASE NO. |
| V. | § § | |
| ROBERT DEAN ACKERMAN, individually And d/b/a ACKERMAN CONSTRUCTION & DISTRIBUTING, ACKERMAN DISTRIBUTING & CONSTRUCITON, ACKERMAN & ACKERMAN, ACKERMAN DISTRIBUTING; HEATHER ACKERMAN BADLEY; TITAN WEST, INC. | § § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants | § § | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff hereby brings this Complaint for Injunctive Relief and Damages, alleging on information and belief as follows:

### Summary of the Complaint

1.      Defendants are infringing on Plaintiff's federally registered trademark. For over fifty years, Plaintiff Pearson's Inc. d/b/a Pearson Livestock Equipment Co. ("Pearson") has designed, manufactured, and sold a series of products for use in the cattle industry. One of its most popular products is its manual cattle chute ("Pearson Chute"). Several physical features of the Pearson Chute receive federal trademark protection: namely, but not exclusively, the Pearson Chute has a rectangular base, an elevated front cross-arm with circular disks at opposite ends, attached to a rear-extending squeeze handle. Because of these physical features, Pearson Chutes are easily recognizable and distinguishable from competitors' cattle chutes.

2.      Defendants manufacture and sell two infringing knock-off cattle chutes, named the "Renegade" and the "Equalizer." The two infringing chutes display the same unique, non-functional, physical features that Pearson's federally registered trademark protects. Defendants' conduct is intentional, deliberate, and specifically targeted at Pearson's customer base in Texas, nationally, and internationally. Pearson respectfully requests the Court enter injunctive relief and award monetary damages for Defendants' violations of the Lanham Act and state law.

## Parties

3.      Pearson's Inc. d/b/a Pearson Livestock Equipment Co. is a corporation with its principal office at 122 Wilbarger Street, Vernon, Texas 76384.

4.      Defendant Robert Dean Ackerman is an individual and a resident of the State of Colorado. He maintains a residence at 22935 CR 33, La Salle, Colorado 80645.

5.      Defendant Heather Ackerman Badley is an individual and a resident of the State of Colorado. She maintains a residence at 22935 CR 33, La Salle, Colorado 80645.

6.      Defendants Ackerman Construction & Distributing, Ackerman Distributing, Ackerman Distributing & Construction, and Ackerman & Ackerman are the unincorporated business identities of Defendant Robert Dean Ackerman. These defendants may be served through their principal Robert Dean Ackerman at his place of business and residence 22935 CR 33, La Salle, Colorado, 80645.

7.      Defendant Titan West, Inc. is a corporation with its principal place of business at 203 5th St., Linn, Kansas 66953. Titan West can be served through its registered agent, Daniel Smerchiek, 115 E. Winkler, Waterville, Kansas 66548.

**Jurisdiction and Venue**

8.      The Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121(a), 18 U.S.C. §§ 1331, 1332(a), 1338(a) & (b), and 1367(a).

9.      The Court may exercise personal jurisdiction over Defendants based on Defendants' regular and intentional conduct of business in Texas and this District.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and (b)(3). A substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in the Northern District of Texas. The Defendants are subject to personal jurisdiction in this District.

11.     Specifically, Ackerman maintains a website which is accessible in the Northern District of Texas (www.ackermansonline.com). The website contains images of the infringing Renegade and Equalizer chutes. Ackerman has also attended several trade shows in the Northern District of Texas where it displayed, marketed, and sold infringing chutes directly to customers in the Northern District, specifically, Wichita Falls, Texas. Ackerman plans to attend similar trade shows in the Northern District of Texas in the future where it plans to display, market, and sell the infringing chutes to more customers. Ackerman's conduct has also injured Pearson who maintains its principal office in the Northern District of Texas, specifically, Vernon, Texas.

12.     Titan West likewise maintains a website that is accessible in the Northern District of Texas (www.titanwestinc.com). The website contains images of the infringing Equalizer chute. Titan West has also attended several trade shows in the Northern District of Texas where it displayed, marketed, and sold infringing chutes directly to customers in the Northern District, specifically, Wichita Falls, Texas. Titan West plans to attend similar trade shows in the Northern District of Texas in the future where it plans to display, market, and sell the infringing chute to

more customers. Titan West's conduct has also injured Pearson who maintains its principal office in the Northern District of Texas, specifically, Vernon, Texas.

### Factual Background – the Pearson Chute

13.     Pearson has manufactured, designed, and sold the Pearson Chute since the 1970's. The Pearson Chute initially received patent protection, but when that series of patents expired, Pearson applied for trademark protection to protect the non-functional design of the Pearson Chute. The United States Patent and Trademark Office agreed and formally registered the Pearson Chute's trademark design in April 2017.

14.     Pearson is the owner of United States Trademark Registration Number 5184202.

> The mark consists of a three-dimensional configuration of a cattle chute, specifically having *four vertical corner posts extending upwardly from a rectangular base*, parallel upper side rails that connect front and rear corner posts, a rear cross arm connecting the upper side rails adjacent the rear cross arm, *a raised front cross arm* connecting the front vertical posts and having extensions extending rearwardly therefrom *and circular disks on opposite ends*, *a squeeze handle extending upward from one of the disks* of the front cross arm, upper and lower front squeeze hinge arms extending rearward from the front corner post, *and the upper and lower rear squeeze hinge arms extending forward from the rear corner post.* The broken lines depicting the front head gate, the side walls, and the rear wall indicate placement of the mark on the goods and are not part of the mark.

(Exhibit 1, emphasis added.) The trademark protects the unique, non-functional, physical features of the Pearson Chute.

15.     These distinctive physical features – namely, the rectangular base, the front cross-arm with circular disks on opposite ends, and the extending squeeze handle – are noticeable even to the untrained eye. Figure 1 is an image of the Pearson Chute's trademark and trade dress, highlighted to emphasize the more unique features of the Pearson Chute.

## FIGURE 1



16.     But even prior to receiving the formal trademark in April 2017, Pearson owned, and owns, trade dress rights relating to the profile, shape, and design of the Pearson Chute. The unique physical features of the Pearson Chute achieved secondary meaning in the Texas, national, and international cattle industry. As a result of its unique shape and design, cattle industry professionals are able to recognize Pearson Chutes at a distance. Industry professionals recognize the Pearson Chute's distinct profile to be associated exclusively with Pearson.

17.     Pearson has undertaken considerable effort over decades to design, develop, manufacture, and market the Pearson Chute. These efforts have not been in vain. Pearson enjoys significant sales of the Pearson Chutes in the Texas, the United States, and abroad. And as a result of Pearson's exclusive and continuing use, the Pearson Chute has developed highly valuable goodwill and substantial secondary meaning.

## Factual Background – Defendants' Infringing Activities

18.    In January 2013, the founding members of Pearson (Jack and Gail Johnston, collectively "Johnston") sold the company to its current owners (David and Ricky Rater, collectively "Rater"). At the time of the sale, Defendant Robert Dean Ackerman, individually and d/b/a Ackerman Construction & Distributing, Ackerman Distributing, Ackerman Distributing & Construction, and Ackerman & Ackerman and Defendant Heather Ackerman Badley (collectively "Ackerman") was an authorized distributor for Pearson in the Colorado region which comprises, in part, of areas within the Northern District of Texas.

19.    After the sale, Rater learned that Ackerman and WW Livestock Equipment, a competitor of Pearson, reverse engineered the Pearson Chute and planned to sell an infringing replica chute. Rater discussed the infringing chute with Ackerman, and Ackerman admitted that he worked with WW Livestock Equipment to manufacture and sell the infringing replica. These unauthorized replicas infringed on Pearson's trademark and trade dress rights. After discovering the infringement, Rater terminated Ackerman as a distributor and contracted with another distributor, High Plains Cattle Supply, to be the exclusive distributor in the Colorado region.

20.    But Ackerman's infringement on Pearson's trademark and trade dress rights continue. Currently, Ackerman sells two infringing replicas of the Pearson Chute, fittingly called the "Renegade" and the "Equalizer." Defendant Titan West, Inc. ("Titan West") manufactures and sells the Equalizer. Defendant Ackerman sells both the Renegade and the Equalizer. The Renegade and the Equalizer both display the same distinct, unique features of the Pearson Chute that receive federal trademark, trade dress, and state law protection and, thus, are infringing products.

21.    These infringing products are confusingly similar, if not identical, to the Pearson Chute. This design of the Renegade and Equalizer is not an accident but an intentional, deliberate,

and willful choice. Pearson has notified both Ackerman and Titan West of its superior trademark and trade dress rights, but Defendants have wantonly disregarded Pearson's federally protected rights and continue to manufacture and sell the Renegade and Equalizer chutes.

22.      Figure 2 is a photograph of the infringing Renegade chute from Ackerman's website. Figure 3 is a photograph of the infringing Equalizer chute from Titan West's website. The infringing similarities are immediately apparent.

**FIGURE 2**



**FIGURE 3**



23.     The Renegade and Equalizer chutes have either the same or an infringing similar rectangular base, elevated front cross-arm with circular disks, and extending squeeze handle. The Renegade and the Equalizer tortiously infringe on Pearson's trademark and trade dress rights in the Pearson Chute.

24.     Pearson has superior rights in the Pearson Chute's trade dress. Pearson used the trademarked design exclusively and continuously long before Ackerman and Titan West began manufacturing, or contracting to manufacture, and selling the Renegade and Equalizer knock-offs. The Renegade and the Equalizer unfairly and tortiously capitalize on the goodwill and secondary meaning that Pearson has cultivated in the Pearson Chute. Ackerman and Titan West have actual and constructive knowledge of Pearson's superior trade dress rights as well as their formal trademark rights.

25.     Ackerman, Titan West, the Renegade, and the Equalizer create a strong likelihood of confusion in the marketplace with the Pearson Chute. Moreover, Ackerman's previous relationship with Pearson as a distributor exacerbates the likelihood of confusion. Defendants' infringements have been intentional and willful, in bad faith, and manifest a deliberate and knowing disregard of Pearson's trademark and trade dress rights, making this an exceptional case under 15 U.S.C. § 1117, entitling Pearson to, among other things, Defendants' profits, actual damages, enhanced damages, and attorneys' fees pursuant to Tex. Bus. & Com. Code § 16.104 and/or 15 U.S.C. § 1117.

26.     The existence of the Renegade and Equalizer chutes in the market have negatively affected Pearson's sales of the Pearson Chute and negatively affected the Pearson brand. It has also unjustly enriched Ackerman and Titan West at the expense of the goodwill and secondary meaning Pearson worked hard to cultivate in the Pearson Chute since the 1970's.

<u>**Causes of Action**</u>

**1.      Trademark Infringement under 15 U.S.C. § 1114.**

27.      Pearson re-alleges each and every allegation set forth as if fully rewritten herein.

28.      Pearson uses the Pearson Chute trademark in interstate commerce to identify it as the source of Pearson products.

29.      Pearson is the owner of Registration Number 5184202. Pearson's rights in the Pearson Chute trademark and trade dress were established before Defendants' first use of the infringing chutes embodying the Pearson Chute trademark.

30.      Since the issuance of Registration Number 5184202, Defendants continue to promote and otherwise advertise the infringing chutes. Defendants' promotion, advertising, distribution, sale and/or offering for sale of the infringing chutes, together with Defendants' use of the Pearson Chute's trademark, are intended to and likely cause confuse, mislead, or deceive customers, the public, and the trade as to the origin, source, sponsorship or affiliation of the infringing chutes. It is likely to cause the erroneous belief that the infringing chutes were authorized, sponsored, endorsed, or licensed by Pearson or that Defendant are somehow affiliated with Pearson.

31.      Defendants' infringing use violates Section 32 of the Lanham Act, 15 U.S.C. § 1114 because they constitute willful and deliberate use in commerce of reproductions, copies, and/or colorable imitations of Pearson's federally registered trademark in connection with the sale, offering for sale, distribution, and advertising of Defendants' products and services in a manner likely to cause confusion, mistake, and deception. Defendants' use of the Pearson Chute's trademark and trade dress is without the consent of Pearson.

32.      Defendants' unlawful conduct has been and continues to be willful, deliberate, and

in bad faith.

33.     Defendants have made and will continue to make substantial profits and/or gains to which they are not entitled by law and equity.

34.     Defendants intend to continue their infringing acts unless restrained by this Court. Pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65(a), Pearson is entitled to an Order from this Court enjoining Defendants' unlawful activities. Defendants' acts have damaged and will continue to damage Pearson, and Pearson has no adequate remedy at law.

35.     Caused by Defendants' activities, Pearson has been damaged in an amount to be ascertained at trial. Pursuant to 15 U.S.C. § 1117 and 1118, Pearson is entitled to a judgement for: (1) Defendants' profits, (2) damages sustained by Pearson, (3) treble damages, (4) Pearson's reasonable attorneys' fees, (5) Pearson's cost of this action, (6) such sums as the Court deems just, (7) interest, and (8) an order that Defendants turn over to Pearson for destruction of all infringing chutes as well as all means of manufacturing, marketing, importing, selling, and making of the infringing products.

**2.     Trade Dress Infringement under 15 U.S.C. § 1125.**

36.     Pearson re-alleges each and every allegation set forth as if fully rewritten herein.

37.     Defendants' offers to sell, sales, distribution, and/or advertisement of their infringing chutes violate the Lanham Act, 15 U.S.C. § 1125 by infringing on Pearson's trade dress rights in the Pearson Chute. Defendants' use of the Pearson Chute's trade dress is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Pearson and as to the origin, sponsorship, or approval of the infringing chutes.

38.     The Pearson Chute's trade dress is entitled to protection under both federal and common law. It uses unique, distinctive, and non-functional designs. Pearson has extensively and

continuously promoted and used the trade dress in the United States. Through that extensive and continuous use, the Pearson Chute's trade dress has become a well-known indicator of the origin and quality of the Pearson Chute among consumers. The Pearson Chute's trade dress has also acquired substantial secondary meaning in the marketplace and did so before Defendants began their unauthorized use of the trade dress.

39.     Defendants' use of the Pearson Trade Dress is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the infringing chutes by creating the false and misleading impression that the infringing chutes are manufactured by, authorized by, or otherwise associated with Pearson.

40.     Defendants' use of the Pearson Chute trademark and trade dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Pearson for which Pearson has no remedy at law, including substantial and irreparable injury to the goodwill and reputation for the quality associated with the Pearson brand.

41.     Defendants' use of the Pearson Trade Dress has been intentional, willful, and malicious. The similarity of the infringing chutes to the Pearson Chute and Defendants' knowing disregard for Pearson's superior rights evidence Defendants' bad faith.

42.     Pearson is entitled to injunctive relief and is entitled to recover (1) Defendants' profits, (2) damages sustained by Pearson, (3) treble damages, (4) Pearson's reasonable attorneys' fees, (5) Pearson's cost of this action, (6) such sums as the Court deems just, (7) interest, and (8) an order that Defendants turn over to Pearson for destruction of infringing chutes as well as all means of manufacturing, marketing, importing, selling, and making of the infringing products.

43.     Defendants' offers to sell, sales, distribution, and/or advertisement of their Infringing Chutes violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 and constitute unfair

competition because Defendants have  obtained an unfair advantage by using the Pearson Chute's trade dress.

**3.      Trade Dress Dilution under Tex. Bus. Com. Code § 16.103.**

44.      Pearson re-alleges each and every allegation set forth as if fully rewritten herein.

45.      Defendants' offers to sell, sales, distribution, and/or advertisement of their Infringing Chutes violate Section 16.103 of the Texas Business and Commerce Code.

46.      The Pearson Chute's trademark and trade dress is entitled to protection under Texas law. It uses unique, distinctive, and non-functional designs. Pearson has extensively and continuously promoted and used the Pearson Chute's trade dress in the United States, in Texas, and abroad. The Pearson Chute's trademark and trade dress has acquired substantial secondary meaning in the marketplace and did so well-before Defendants began using the Pearson Chute's trademark and trade dress in their infringing chutes.

47.      Defendants' use of the Pearson Chute's trademark and trade dress is likely to cause, and has caused, dilution of the trademark and trade dress by eroding exclusive identification of the trademark and trade dress with Pearson, by lessening the capacity of the trademark and trade dress to identify and distinguish the Pearson Chute, by associating the trademark and trade dress with chutes of another origin and quality, and by impairing its distinctiveness.

48.      Defendants' use of the Pearson Trade Dress has been intentional, willful, and malicious. The similarity of the infringing chutes to the Pearson Chute and Defendants' knowing disregard for Pearson's superior rights evidence Defendants' bad faith.

49.      Pearson is entitled to injunctive relief and is entitled to recover (1) Defendants' profits, (2) damages sustained by Pearson, (3) treble damages, (4) Pearson's reasonable attorneys' fees, (5) Pearson's cost of this action, (6) such sums as the Court deems just, (7) interest, and (8)

an order that Defendants turn over to Pearson for destruction of all infringing chutes as well as all means of manufacturing, marketing, importing, selling, and making of the infringing products.

**4.      Trade Dress Infringement under Texas Common Law.**

50.      Pearson re-alleges each and every allegation set forth as if fully rewritten herein.

51.      Defendants' offers to sell, sales, distribution, and/or advertisement of their infringing chutes, in direct competition with Pearson, constitute common law trademark infringement because, at a minimum, Defendants' use and/or colorable imitation of the Pearson Chute's trade dress is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the infringing chutes.

52.      The Pearson Chute's trade dress is entitled to protection under Texas law. It uses unique, distinctive, and non-functional designs. Pearson has extensively and continuously promoted and used the Pearson Chute's trade dress in the United States, in Texas, and abroad. The Pearson Chute's trade dress has acquired substantial secondary meaning in the marketplace and did so well-before Defendants began using the Pearson Chute's trademark and trade dress in their infringing chutes.

53.      Defendants' use of the Pearson Chute's trade dress is likely to cause, and has caused, dilution of the Pearson trade dress by eroding the exclusive identification of the trade dress with Pearson, by lessening the capacity of the trade dress to identify and distinguish the Pearson Chute, by associating the trade dress with chutes of another origin and quality, and by impairing its distinctiveness.

54.    Defendants' use of the Pearson Trade Dress has been intentional, willful, and malicious. The similarity of the infringing chutes to the Pearson Chute and Defendants' knowing disregard for Pearson's superior rights evidence Defendants' bad faith.

55.    Pearson is entitled to injunctive relief and is entitled to recover (1) Defendants' profits, (2) damages sustained by Pearson, (3) treble damages, (4) Pearson's reasonable attorneys' fees, (5) Pearson's cost of this action, (6) such sums as the Court deems just, (7) interest, and (8) an order that Defendants turn over to Pearson for destruction of all infringing chutes as well as all means of manufacturing, marketing, importing, selling, and making of the infringing products.

## Demand for a Jury Trial

56.    Plaintiff, Pearson's Inc., hereby demands a jury trial on all triable issues as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

## Relief Sought

57.    WHEREFORE, Plaintiff respectfully prays for:

a.    A finding that (1) Defendants have infringed on Pearson's registered and unregistered trademark and trade dress in violation of 15 U.S.C. § 1114; (2) Defendants have infringed on Pearson's registered and unregistered trademark and trade dress in violation of 15 U.S.C. § 1125; (3) Defendants have infringed on Pearson's registered and unregistered trademark and trade dress under the common law of the State of Texas and the Business & Commerce Code; and (4) Defendants have engaged in unfair competition under the common law of the State of Texas;

b.    An injunction pursuant to Fed. R. Civ. P. 65 and 15 U.S.C. § 1116 to preliminarily and permanently restrain and enjoin Defendants and their respective officers, agents,

employees, and attorneys or any person or entity in active concert or participation with Defendants from:

          i.      Manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any product that bears or incorporates the Pearson Chute's trademark or trade dress including without limitation the Renegade and the Equalizer chutes, and from engaging in any other activity constituting an infringement of Pearson's rights;

          ii.      Engaging in any other activity constituting unfair competition with Pearson or acts or practices that deceive customers, the public, and/or the trade including without limitation the use of designations and design elements associated with Pearson;

          iii.      Engaging in any other activity that will cause distinctiveness of the Pearson Chute's trademark and trade dress to be diluted or damaged;

          c.      Requiring Defendants to file with this Court and serve on Pearson within thirty days after the entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Defendants complied with the injunction;

          d.      Requiring Defendants to recall from any distributors and retailers and to deliver to Pearson for destruction or other disposition all remaining inventory of Renegade, Equalizer, or other infringing chutes including all advertisements, promotional, and marketing materials thereof, as well as the means of making the same;

          e.      Directing such other relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any product at issue in this action that has been manufactured, imported, advertised, marketed, promoted,

supplied, distributed, offered for sale, or sold by Defendants, has been authorized by Pearson or is in any way affiliated with Pearson;

       f.    Awarding Pearson damages and ordering Defendants to account and pay to Pearson all profits realized by its wrongful acts and also awarding Pearson its actual damages and also directing that such profits or actual damages be trebled pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

       g.    Awarding Pearson actual and punitive damages to which it is entitled under applicable federal and state laws;

       h.    Awarding Pearson its costs, attorneys' fees, investigatory fees, and expenses to the full extent provided by Section 35 of the Lanham Act, 15 U.S.C. § 1117;

       i.    Awarding Pearson pre-judgement interest or any monetary award made part of the judgment against Defendants; and

       j.    Awarding Pearson such additional and further relief as the Court deems just and proper.

                            Respectfully submitted,

                            */s/ Matthew Meyer*

                            Matthew Meyer
                            State Bar No. 24088052
                            mmeyer@bpwlaw.com
                            Allen L. Williamson
                            State Bar No. 24003305
                            awilliamson@bpwlaw.com

                            BOYD POWERS & WILLIAMSON
                            P.O. Box 957
                            105 North State Street, Suite B
                            Decatur, Texas
                            (940) 627-8308
                            (940) 627-8092 (facsimile)

David Spiller
State Bar No. 18934950
david@spillerlaw.net
Mason Spiller
State Bar No. 24095168
mason@spillerlaw.net

SPILLER & SPILLER
P.O. Drawer 447
Jacksboro, Texas 76458
(940) 567-6644 (Telephone)
(940) 567-3999 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**